**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PARLUX LTD., PARIS HILTON, and
KENNETH COLE PRODUCTIONS (LIC),
LLC,

Case No._____

Plaintiffs,

JURY TRIAL DEMANDED

v.

MIAMI TRADING ZONE, LLC, SUSANA
BAGUEAR, and DIEGO ALONZO,

Defendants.

**VERIFIED COMPLAINT**

Plaintiffs Parlux LTD. ("Parlux"), Paris Hilton ("Hilton"), and Kenneth Cole Productions

(LIC), LLC ("KCPL"), (together, "Plaintiffs") bring this action against Miami Trading Zone, LLC

("MTZ"), Susana Baguear ("Baguear"), and Diego Alonzo ("Alonzo") (together, "Defendants")

and allege as follows:

**INTRODUCTION**

1.      This is an action for: trademark infringement and counterfeiting under 15 U.S.C. §

1114(a); trade dress infringement and false designation of origin under 15 U.S.C. § 1125(a);

dilution under 15 U.S.C. § 1125(c); unfair competition and trademark infringement under Florida

common law; and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §

501.201 *et seq.*

2.      Defendants are engaged in the sale and distribution of counterfeit versions of

PARIS HILTON® and KENNETH COLE® branded fragrances. Passing of the products as

authentic, Defendants' egregious pattern includes supplying these fake products to wholesale

customers, which has led to a significant flooding of the downstream market with fake and unauthorized perfumes.

3. Defendants' infringing conduct has not only deprived Plaintiffs of rightful sales of their legitimate products, but has also caused substantial harm to the reputation and value of the PARIS HILTON and KENNETH COLE trademarks. The proliferation of counterfeit goods in the market undermines consumer trust and damages the brand image that has been carefully built over the years. Defendants' conduct must be stopped.

## THE PARTIES

4. Parlux Ltd. is a New York corporation with its principal place of business at 35 Sawgrass Drive, Suite 2, Bellport, New York 11713. Parlux Ltd. is engaged, *inter alia*, in the manufacturing and wholesale distribution, both domestically and internationally, of fragrances, colognes, perfumes and related accessories, including as the exclusive global authorized licensee of the PARIS HILTON and KENNETH COLE fragrance brands.

5. Paris Hilton is an individual who, at all times relevant hereto, was domiciled in Los Angeles, California. Hilton is the owner of the trademark PARIS HILTON for fragrances and other related products.

6. Kenneth Cole Productions (LIC), LLC is a limited liability company formed under the laws of Delaware with its principal place of business located at 511 W 21st Street, New York, New York 10011. Kenneth Cole Productions (LIC), LLC is the owner of the trademark KENNETH COLE for fragrances and other related products.

7. Upon information and belief, MTZ is a limited liability company formed under the laws of the State of Florida with its principal place of business located at 10801 NW 97th Street, Suite 11, Miami, Florida 33178.

8. Upon information and belief, Defendant Susana Baguear is an individual residing in Miami, Florida. Baguear is the Manager of MTZ and directs, controls, ratifies, participates in, and/or is the moving force behind MTZ's wrongful activities alleged herein.

9. Upon information and belief, Defendant Diego Alonzo is an individual residing in Doral, Florida. Alonzo is the Vice President of MTZ and directs, controls, ratifies, participates in, and/or is the moving force behind MTZ's wrongful activities alleged herein.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), in that the case arises out of claims for trademark infringement, false designation of origin, and unfair competition under the Lanham Act (15 U.S.C. § 1051 *et seq.*).

11. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a) and 1338(a) and (b) over all other claims.

12. This Court has personal jurisdiction over all Defendants because MTZ's principal place of business is located in the Southern District of Florida and each of the individual Defendants reside in this District. Additionally, all of the Defendants have committed tortious and illegal activities of trademark infringement and unfair competition in this District.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants are located in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND
### Plaintiff Parlux's Business

14. Parlux is a cosmetic and fragrance company which specializes in the design, manufacturing, marketing, and distribution of fragrances and related products in both domestic and international markets.

3

15. For over 30 years, Parlux has shaped the beauty landscape as a powerhouse behind some of the world's most iconic brands, as it launches, scales, and distributes brands across leading beauty and luxury retailers worldwide.

16. Parlux is a duly authorized licensee of the PARIS HILTON trademarks.

17. Parlux is a duly authorized licensee of KCPL's KENNETH COLE trademarks.

18. Upon information and belief, MTZ, with the direction, control and/or participation of Defendants Baguear and Alonzo, has sold, and distributed counterfeit PARIS HILTON-branded and KENNETH COLE-branded fragrances to consumers at prices substantially lower than the prices at which Parlux sells genuine products bearing those marks.

19. By offering counterfeit fragrances at lower prices, Defendants have unfairly diverted customers and business away from Parlux, causing Parlux to lose substantial sales revenue that it would have otherwise earned.

20. Defendants have knowingly and intentionally represented to customers and the purchasing public that their counterfeit products are genuine, authentic fragrances manufactured and distributed by or on behalf of Plaintiffs Hilton and KCPL, when in fact they are not.

21. Defendants' false representations regarding the authenticity of their products are material and have the tendency to deceive a substantial segment of their intended audience, including wholesale purchasers and retail consumers of fragrances.

22. As a direct and proximate result of Defendants' false advertising and unfair competition, Plaintiffs has suffered and will continue to suffer irreparable harm to its business, goodwill, and reputation, including but not limited to lost profits, diminished brand value, and loss of customer relationships.

**Plaintiff Paris Hilton's Trademark and Trade Dress**

23.     Hilton is an international celebrity, actress, fashion designer, musician, and socialite. She is also the owner of numerous trademark registrations for the PARIS HILTON mark in the U.S. and in additional countries throughout the world.  The PARIS HILTON brand includes clothing and footwear, handbags, cosmetics, watches, and fashion accessories, in addition to fragrances. Millions of bottles of Hilton's fragrances have been sold all over the world.

24.     Among others, Hilton owns an incontestable United States trademark registration under number 3059587 for the trademark PARIS HILTON covering "fragrances, namely, perfumes, eau de parfum, cologne, eau de toilet, body lotion, bath gel" in Class 3. A copy of the U.S. Patent and Trademark Office ("USPTO") database record for this registration is attached as **Exhibit A**.

25.     The PARIS HILTON mark has been used in connection with the PARIS HILTON line of fragrances and related products since at least as early as 2004.

26.     The fragrances and related products bearing the PARIS HILTON trademark are marketed and sold nationally by well-known retailers such as Ulta, Amazon, Walmart, CVS, and Walgreens as well as online.

27.     The PARIS HILTON fragrances are sold individually and also as part of a packaged gift set that includes other beauty products, such as body lotion and shower gel for women and hair and body wash and deodorant for men.

28.     Between 2017 to the present day, PARIS HILTON-branded fragrances have achieved substantial commercial success and have generated hundreds of millions of dollars in sales.

29.     Additionally, tens of millions of dollars have been spent on advertising and marketing the PARIS HILTON-branded fragrances between 2017 to the present day.

30. Because of the long, and extensive use and promotion of the PARIS HILTON trademark, and in light of the unsolicited media coverage and notoriety pertaining to the PARIS HILTON trademark used on fragrances and related products, the PARIS HILTON mark has become distinctive, and indicates a single source of origin of Hilton's goods.

31. Hilton also owns distinctive trade dress used in connection with PARIS HILTON-branded fragrances.

32. This unique trade dress for the product design (the "PH Product Trade Dress") has contributed to the successful marketing and sales of the PARIS HILTON fragrance lines. Among the key elements of the distinctive PH Product Trade Dress are: (i) a slim cylindrical-shaped bottle with a matching cylindrical cap; (ii) the bottle and cap are transparent with a pink tint, allowing light to pass through; (iii) black decorative wavy lines run vertically around the bottle and cap; and (iv) around the upper portion of the bottle, just below the cap, is a metallic-looking silver band that features the wording "Paris Hilton" written in a black cursive-style font.

33. Similarly, the outer packaging for individual fragrances bearing the PARIS HILTON trademark have a unique trade dress (the "PH Packaging Trade Dress") that has contributed to the successful marketing and sales of the fragrance lines. Among the key elements of the distinctive PH Packaging Trade Dress are: (i) a slim box; (ii) the three side panels of the box are pink and feature black vertical wavy lines; (iii) the front view of the box features a photograph of Paris Hilton in a white dress with the wording "Paris Hilton" in a black cursive-style font running vertically up the right side of the view; and (iv) the inside top flaps of the box are pink.

34. The PH Product Trade Dress and PH Packaging Trade Dress (collectively, the "PH Trade Dress") is distinctive of Hilton's products and has become a valuable element of their reputation and goodwill and is recognized as such by the trade and consuming public.

6

35.     The PH Trade Dress has acquired secondary meaning due to the longstanding and consistent use of the PARIS HILTON trade dress throughout the PARIS HILTON product line and extensive promotion and sales since at least as early as 2004. As a result, consumers who see fragrance or beauty products with the distinctive PARIS HILTON trade dress immediately recognize these products as Hilton's products.

36.     The PH Trade Dress is not functional and is used as a source identifier for Paris Hilton's products.

**Defendants' Infringement of Hilton's Trademark and Trade Dress**

37.     In the regular course of monitoring the marketplace, Parlux learned that MTZ, with the direction, control and/or participation of Defendants Baguear and Alonzo, is selling counterfeit fragrances bearing marks and designs identical and/or substantially indistinguishable from the PARIS HILTON trademark and trade dress (the "Infringing PH Products").

38.     Neither Hilton nor Parlux have authorized or endorsed Defendants' use, sale, and/or distribution of any products bearing the PARIS HILTON trademark or PH Trade Dress.

39.     Upon review of the Infringing PH Products, Parlux confirmed that they are not authentic PARIS HILTON products.

40.     The Infringing PH Products were packaged and labeled in a style and manner intentionally and confusingly similar to genuine PARIS HILTON-branded products.

41.     Specifically, in addition to bearing a counterfeit version of the PARIS HILTON trademark, the Infringing PH Products feature the following characteristics which are identical or confusingly similar to the PH Product Trade Dress: (i)  a slim cylindrical-shaped bottle with a matching cylindrical cap; (ii) the bottle and cap are transparent with a pink tint, allowing light to pass through; (iii) black decorative wavy lines run vertically around the bottle and cap; and (iv)

around the upper portion of the bottle, just below the cap, is a metallic-looking silver band that features "Paris Hilton" written in a black cursive-style font. Side by side comparisons of a genuine PARIS HILTON fragrance and one of Defendants' infringing products are pictured below:

 

42.      Further, the packaging of the Infringing PH Products feature the following characteristics that are identical or confusingly similar to the PH Packaging Trade Dress: (i) a slim box; (ii) the three side panels of the box are pink and feature black vertical wavy lines; (iii) the front view of the box features a photograph of Paris Hilton in a white dress with the wording "Paris Hilton" in a black cursive-style font running vertically up the right side of the view; (iv) the bottom view of the box features a bar code; and (v) the inside top flaps of the box are pink. Side by side comparisons of packaging for a genuine PARIS HILTON fragrance and one of Defendants' infringing products are pictured below:






43.     In reviewing the genuine and counterfeit products, Parlux confirmed that the photograph of Paris Hilton and batch code used on the Infringing PH Packaging do not correspond with those appearing on genuine PARIS HILTON fragrance packaging from the same time period,

9

and that at least one of the purported "batch codes" on the Infringing PH Packaging does not even exist.

44.     The Infringing PH Products were also delivered in a cellophane wrapping. However, genuine PARIS HILTON fragrance products are not distributed with cellophane wrapping.

45.     Defendants' counterfeit products use, without authorization, Hilton's PARIS HILTON trademark and PH Trade Dress.  By doing so, Defendants' products falsely designate the origin of said products and are likely to cause confusion among consumers, who may believe that these products are authentic PARIS HILTON products, when, in reality, they are not.

46.     In fact, Defendants have knowingly and intentionally misrepresented to customers that the products they sell are authentic PARIS HILTON products.

47.     In the screenshots below taken from MTZ's official website <https://miamitradingzone.com/>, MTZ represents to potential customers that the products it offers for sale are "100% genuine and original." A copy of the entire webpage is attached as **Exhibit B**.

## MIAMI TRADING ZONE

We were established to provide retailers and wholesalers with top selling fragrances at great prices while offering exceptional service every time. All merchandise that we sell is 100% genuine and original .

Our company has seen significant growth as we continue to offer low prices and a vast variety of top selling perfumes while carrying an extensive inventory. Miami Trading Zone  has a strong command of the most popular products available and at the best possible prices.

48.     Defendants' actions are willful and reflect an intent to confuse and deceive consumers and profit from the goodwill and consumer recognition associated with Hilton, the PARIS HILTON mark, and PH Trade Dress.

49.     Defendants' actions are also harming the reputation of the PARIS HILTON brand, and significantly damaging Parlux, the manufacturer and distributor of legitimate PARIS HILTON products.

50.     Defendants will, unless restrained by this Court, continue to infringe and dilute the PARIS HILTON trademark and PH Trade Dress, and will continue to engage in deceptive trade practices and unfair competition.

### KCPL's Trademark

51.     KCPL is the owner of numerous trademarks for the KENNETH COLE mark in the U.S. and in additional countries throughout the world. The KENNETH COLE brand includes clothing, jewelry, footwear, home decor, and fashion accessories, in addition to fragrances. Millions of bottles of KCPL's fragrances have been sold all over the world.

52.     Among others, KCPL owns an incontestable United States trademark registration under number 3701714 for the trademark KENNETH COLE covering "eau de toilette, eau de parfum, after shave, after shave gel, after shave balm, hair and body wash, body lotion, shower gel and deodorant sticks for personal use" in Class 3. A copy of the U.S. Patent and Trademark Office ("USPTO") database record for this registration is attached as **Exhibit C**.

53.     The KENNETH COLE mark has been used in connection with fragrances and related products since at least as early as 2003.

54.     Between 2014 to the present day, KENNETH COLE-branded fragrances have achieved substantial commercial success and have generated hundreds of millions of dollars in sales.

55.     Additionally, tens of millions of dollars have been spent on advertising and marketing the KENNETH COLE-branded fragrances between 2014 to the present day.

11

56. The fragrances and related products bearing the KENNETH COLE trademark are marketed and sold nationally by well-known retailers such as Macy's Walmart, and Amazon, as well as online.

57. Because of the long, and extensive use and promotion of the KENNETH COLE trademark, and in light of the unsolicited media coverage and notoriety pertaining to the KENNETH COLE trademark used on fragrances and related products, the KENNETH COLE mark has become distinctive, and indicates a single source of origin of KCPL's goods.

### Defendants' Infringement of KCPL's Trademark

58. In the regular course of monitoring the marketplace, Parlux learned that MTZ, with the direction, control and/or participation of Defendants Baguear and Alonzo, is selling counterfeit fragrances bearing marks and designs identical and/or substantially indistinguishable from the KENNETH COLE trademark (the "Infringing KC Products").

59. Neither KCPL nor Parlux have authorized or endorsed Defendants' use, sale, and/or distribution of any products bearing the KENNETH COLE trademark.

60. Upon review of the Infringing KC Products, Parlux confirmed that they are not authentic KENNETH COLE products.

61. The Infringing KC Products were packaged and labeled in a style and manner intentionally and confusingly similar to genuine KENNETH COLE-branded products.

62. Specifically, in addition to bearing a counterfeit version of the KENNETH COLE trademark, the Infringing KC Products feature the following characteristics which are identical or confusingly similar to genuine KENNETH COLE products: (i) a short bottle with a round, cylindrical body; (ii) on top sits a short, wide cylindrical cap that aligns neatly with the body, creating a stacked, tiered look; (iii) the entire bottle, including the cap, is solid black with a shiny

finish; (iv) a small round transparent sticker appears on the bottom of the bottle; (v) near the bottom of the front view of the bottle contains the word "BLACK" in all capital letters in a stylized bold white font stacked above the wording "Kenneth Cole" in a smaller stylized bold white font. Side by side comparisons of a genuine KENNETH COLE fragrance and one of Defendants' infringing products are pictured below:









63.    Further, the packaging of the Infringing KC Products feature the following characteristics that are identical or confusingly similar to packaging for genuine KENNETH COLE products: (i) the packaging is a square black box; (ii) the bottom view of the box contains three icons stacked above a UPC code, stacked above a batch code; (iii) the back view of the box contains the ingredients list, stacked above a warning message about the product's flammability, stacked above manufacturer and distribution information, stacked above product origination information, stacked above the wording "© KENNETH COLE PRODUCTIONS (LIC) LLC," stacked above the Responsible Person address, all in a small grey font; (iv) the front view of the packaging contains the word "BLACK" in all capital letters in a stylized bold white font and the wording "Kenneth Cole" beneath it in a smaller stylized bold white font; and (v) the inside of the packaging is a shade of the color white. Side by side comparisons of packaging of a genuine KENNETH COLE fragrance and one of Defendants' infringing products are pictured below:







15



64.     Like authentic KENNETH COLE products, the Infringing KC Products also include a batch code on the bottom panel of the packaging. The batch codes on the Infringing KC Products, however, contain information that does not align with Parlux's production history of genuine KENNETH COLE BLACK fragrances. The below photograph shows one of the Infringing KC Products with an inauthentic "batch code":



16

65. Defendants' counterfeit products use, without authorization, KCPL's KENNETH COLE trademark. By doing so, Defendants' products falsely designate the origin of said products and are likely to cause confusion among consumers, who may believe that these products are authentic KENNETH COLE products, when, in reality, they are not.

66. In fact, Defendants have knowingly and intentionally misrepresented to customers that the products they sell are authentic KENNETH COLE products.

67. In the screenshots below taken from MTZ's official website <https://miamitradingzone.com/>, MTZ represents to potential customers that the products it offers for sale are "100% genuine and original." *See* **Exhibit B**.

## MIAMI TRADING ZONE

We were established to provide retailers and wholesalers with top selling fragrances at great prices while offering exceptional service every time. All merchandise that we sell is 100% genuine and original .

Our company has seen significant growth as we continue to offer low prices and a vast variety of top selling perfumes while carrying an extensive inventory. Miami Trading Zone  has a strong command of the most popular products available and at the best possible prices.

68. Defendants' actions are willful and reflect an intent to confuse and deceive consumers and profit from the goodwill and consumer recognition associated with KCPL and the KENNETH COLE mark.

69. Defendants' actions are also harming the reputation of the KENNETH COLE brand, and significantly damaging Parlux, the manufacturer and distributor of legitimate KENNETH COLE products.

70. Defendants will, unless restrained by this Court, continue to infringe and dilute the KENNETH COLE trademark, and will continue to engage in deceptive trade practices and unfair competition.

## COUNT I
### (Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114(a))

71.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 71 as though fully set forth herein.

72.     Hilton owns valid and enforceable rights in the PARIS HILTON mark for use on the goods identified in and corresponding to her registration under Reg. No. 3059587. The U.S. registration for PARIS HILTON (Reg. No. 3059587) is incontestable and constitutes conclusive evidence of Hilton's exclusive right to use and license the use of the PARIS HILTON mark.

73.     Without any authorization or consent from Hilton or Parlux, Defendants have used, counterfeited, and imitated the PARIS HILTON mark on their own products by offering, selling, or causing the sale of counterfeit products bearing the PARIS HILTON mark in interstate commerce.

74.     Defendants' unauthorized use in commerce of the PARIS HILTON mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of products, and is likely to cause consumers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by Hilton.

75.     Defendants' conduct therefore constitutes trademark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

76.     Defendants' conduct is causing immediate and irreparable harm and injury to the PARIS HILTON brand, and to its goodwill and reputation, and will continue to both damage Hilton and confuse the public unless enjoined by this Court.  Hilton has no adequate remedy at law.

77.     Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Hilton's rights in the PARIS HILTON

mark and with intent to cause confusion and to trade on Hilton's vast goodwill in the PARIS HILTON mark.

78.    In view of the egregious nature of Defendants' infringement, Hilton requests and is entitled to injunctive relief as provided by 15 U.S.C. § 1116 and damages pursuant to 15 U.S.C. § 1117, including Defendants' profits, treble damages, reasonable attorney fees, costs, statutory damages, and/or prejudgment interest.

## COUNT II
### (Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114(a))

79.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 71 as though fully set forth herein.

80.    KCPL owns valid and enforceable rights in the KENNETH COLE mark for use on the goods identified in and corresponding to its registration under Reg. No. 3701714. The U.S. registration for KENNETH COLE (Reg. No. 3701714) is incontestable and constitutes conclusive evidence of KCPL's exclusive right to use and license the use of the KENNETH COLE mark.

81.    Without any authorization or consent from KCPL or Parlux, Defendants have used, counterfeited, and imitated the KENNETH COLE mark on their own products by offering, selling, or causing the sale of counterfeit products bearing the KENNETH COLE mark in interstate commerce.

82.    Defendants' unauthorized use in commerce of the KENNETH COLE mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of products, and is likely to cause consumers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by KCPL.

83.    Defendants' conduct therefore constitutes trademark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

19

84. Defendants' conduct is causing immediate and irreparable harm and injury to the KENNETH COLE brand, and to its goodwill and reputation, and will continue to both damage KCPL and confuse the public unless enjoined by this Court.  KCPL has no adequate remedy at law.

85. Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of KCPL's rights in the KENNETH COLE mark and with intent to cause confusion and to trade on KCPL's vast goodwill in the KENNETH COLE mark.

86. In view of the egregious nature of Defendants' infringement, KCPL requests and is entitled to injunctive relief as provided by 15 U.S.C. § 1116 and damages pursuant to 15 U.S.C. § 1117, including Defendants' profits, treble damages, reasonable attorney fees, costs, statutory damages, and/or prejudgment interest.

## <u>COUNT III</u>
### <u>(Trade Dress Infringement Under 15 U.S.C. § 1125(a))</u>

87. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 86 as though fully set forth herein.

88. Defendants marketed, promoted, and sold, and continue to market, promote, and sell their imitations using the PARIS HILTON and KENNETH COLE marks.

89. Additionally, Defendants are using a trade dress that is identical or confusingly similar to the trade dress of the PARIS HILTON fragrances in a manner that has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Hilton, or as to the origin, sponsorship, or approval of Defendants' goods by Hilton.

90. The PH Trade Dress used in packaging the PARIS HILTON-branded fragrances has acquired distinctiveness through secondary meaning.

91. The PH Trade Dress is non-functional.

92. Defendants' acts of trade dress infringement were and are willful and deliberate.

93. Upon information and belief, Defendants have profited from their illegal and bad faith activities.

94. The above-described conduct of Defendants constitutes trade dress infringement that is likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Defendants or their goods with Plaintiffs' goods in violation of 15 U.S.C. §1125(a).

95. Defendants' ongoing acts of infringement in violation of 15 U.S.C. §1125(a) are fraudulent, willful, and deliberate.

96. In view of the egregious nature of Defendants' infringement, Plaintiffs request and are entitled to injunctive relief as provided by 15 U.S.C. § 1116 and damages pursuant to 15 U.S.C. § 1117, including Defendants' profits, treble damages, reasonable attorney fees, costs, statutory damages, and/or prejudgment interest.

## COUNT IV
### (False Advertising, False Designation of Origin, and False Descriptions Under 15 U.S.C. § 1125)

97. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 96 as though fully set forth herein.

98. Defendants' use of the PARIS HILTON mark and KENNETH COLE mark is likely to cause confusion, mistake, or deception as to the source or origin of Plaintiffs' goods, or suggest

21

an affiliation, connection, or association of Defendants' goods with Plaintiffs' goods, or the approval of Defendants' goods by Plaintiffs.

99.    Defendants' representations that the products it offers for sale are "100% genuine and original" as described in this Complaint, are misrepresentations regarding the nature, character, or qualities of the goods Defendants offer.

100.    Defendants' acts constitute false designation of origin, false advertising, and false and misleading descriptions or representations in violation of 15 U.S.C. § 1125.

101.    Plaintiffs have suffered and are continuing to suffer monetary damages and irreparable harm as a result of Defendants' ongoing violations of law.

102.    Defendants are engaging in these acts of infringement knowingly and willfully.

## COUNT V
### (Dilution Under 15 U.S.C. § 1125(c))

103.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 102 as though fully set forth herein.

104.    The use of the PARIS HILTON mark in commerce by Defendants in connection with their promotion and sale of low quality, counterfeit products is likely to cause, has caused, and will continue to cause dilution by tarnishment of the distinctive quality of the PARIS HILTON mark, and is likely to lessen, has lessened, and will continue to lessen Hilton's reputation as a source of high quality fragrances, all in violation of Section 43(c) of the Lanham Act.

105.    The use of the KENNETH COLE mark in commerce by Defendants in connection with their promotion and sale of low quality, counterfeit products is likely to cause, has caused, and will continue to cause dilution by tarnishment of the distinctive quality of the KENNETH COLE mark, and is likely to lessen, has lessened, and will continue to lessen KCPL's reputation as a source of high quality fragrances, all in violation of Section 43(c) of the Lanham Act.

22

106.     Defendants' ongoing acts of dilution in violation of Sections 43(c) of the Lanham Act have inflicted and, if not enjoined, will continue to inflict irreparable harm on Plaintiffs.  Thus, Plaintiffs have no adequate remedy at law and Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

107.     The actions of Defendants were undertaken willfully and with the intention of trading on Hilton's reputation or causing dilution of the PARIS HILTON mark entitling Hilton to recover remedies pursuant to 15 U.S.C. § 1117(a), including Defendants' profits, losses sustained by Hilton due to Defendants' conduct, costs of the action, and additional treble damages and reasonable attorneys' fees.

108.     The actions of Defendants were undertaken willfully and with the intention of trading on KCPL's reputation or causing dilution of the KENNETH COLE mark entitling KCPL to recover remedies pursuant to 15 U.S.C. § 1117(a), including Defendants' profits, losses sustained by KCPL due to Defendants' conduct, costs of the action, and additional treble damages and reasonable attorneys' fees.

## COUNT VI
### (Deceptive and Unfair Trade Practices Under Fla. Stat. § 501.201 *et seq.*)

109.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 108 as though fully set forth herein.

110.     Section 501.204(1) provides, in pertinent part, that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  The provisions of the Act shall be construed liberally "to protect the consuming public and legitimate business enterprises from those who engage in…deceptive[] or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat § 501.202(2) (2021).

111. Defendants, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Act. Fla. Stat. § 501.203 (2021).

112. Defendants' unauthorized use of the PARIS HILTON mark and counterfeiting of PARIS HILTON-branded products in commerce caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Hilton and her PARIS HILTON brand.

113. Defendants' unauthorized use of the KENNETH COLE mark and counterfeiting of KENNETH COLE-branded products in commerce caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with KCPL and the KENNETH COLE brand.

114. Defendants' unauthorized use of the PARIS HILTON and KENNETH COLE marks constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of Fla. Stat. § 501.204 (2021).

115. Plaintiffs have suffered actual damages in the form of lost sales and tarnished reputation as a result of Defendants' unauthorized use of the PARIS HILTON and KENNETH COLE marks and sale of counterfeit PARIS HILTON-branded and KENNETH COLE-branded products.

## COUNT VII
### (Trademark Infringement Under Florida Common Law)

116. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 115 as though fully set forth herein.

117. KCPL has a protectable interest in its KENNETH COLE mark that was acquired prior to Defendants' infringing use.

118.    Hilton has a protectable interest in her PARIS HILTON mark that was acquired prior to Defendants' infringing use.

119.    With full knowledge of the PARIS HILTON and KENNETH COLE marks, Defendants intended to and did trade off the goodwill associated with these marks. Defendants have commenced and intend to continue to use identical or confusingly similar marks and designs to indicate or identify the counterfeit products marketed by Defendants.

120.    Defendants have misled and will continue to mislead consumers and the public into incorrectly believing that the products Defendants sell are, in fact, authentic PARIS HILTON products when they are not.

121.    Defendants have misled and will continue to mislead consumers and the public into incorrectly believing that the products Defendants sell are, in fact, authentic KENNETH COLE products when they are not.

122.    Defendants have misled and will continue to mislead consumers and the public into falsely believing that there is a connection between Defendants and Hilton when there is not.

123.    Defendants have misled and will continue to mislead consumers and the public into falsely believing that there is a connection between Defendants and KCPL when there is not.

124.    Defendants' unauthorized usage of the PARIS HILTON and KENNETH COLE marks in commerce is likely to cause, has caused, and will continue to cause customer confusion.

125.    As a consequence of Defendants' actions, customer confusion as to source or sponsorship of the products offered, or to be offered, by Defendants is likely or inevitable.

126.    Accordingly, Defendants have committed trademark infringement in violation of the common law of the State of Florida.

## COUNT VIII
### (Unfair Competition Under Florida Common Law)

127.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 126 as though fully set forth herein.

128.    Defendants' activities constitute acts of unfair competition in violation of the common law of the State of Florida and unjustly enrich Defendants to Plaintiffs' detriment.

WHEREFORE, Plaintiffs demand a judgment in their favor and against Defendants as follows:

A.    An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service (the "Enjoined Parties"), to:

   i.    never import, advertise, market, distribute, and/or sell: (1) any counterfeit product bearing the PARIS HILTON mark or any similar name or mark; (2) any counterfeit product bearing the KENNETH COLE mark or any similar name or mark; or (3) any other identical or similar name or mark owned or licensed by Plaintiffs;

   ii.    never publish, display, distribute, disseminate, use, permit, enter into, and/or perform any agreement that involves any advertising which communicates any claims or messages, or which in any way states or implies, that Defendants' products are authentic PARIS HILTON-branded products, KENNETH COLE-branded products, and/or any other products owned or licensed by Plaintiffs when they are not;

   iii.    never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with Plaintiffs, including any products owned or licensed by Plaintiffs;

   iv.    never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief that Defendants, or any of their goods or services, are related in any way to Plaintiffs; and

   v.    never unfairly compete with Plaintiffs in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any

26

way to the production, distribution, marketing, and/or sale of products and services bearing the PARIS HILTON marks, KENNETH COLE marks, and/or any other identical or similar to mark owned or licensed by Plaintiffs.

B.      An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve upon Plaintiffs' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

C.      An order, pursuant to 15 U.S.C. § 1118, directing the Enjoined Parties to deliver and destroy all infringing products, labels, signs, prints, packages, wrappers, receptacles, advertisements, plates, molds, matrices, and/or other means of making the same.

D.      An order directing an accounting by Defendants of their profits by reason of their counterfeiting, infringement, unfair competition, false advertising, and deceptive acts and practices

E.      An order directing Defendants to advise Plaintiffs where the counterfeit products bearing the PARIS HILTON mark and/or KENNETH COLE mark and associated promotional, advertising and packaging materials originate from.  If the counterfeit products and associated materials are provided to Defendants from suppliers, distributors or manufacturers, then Defendants must immediately provide Plaintiffs with the contact information for those suppliers, distributors or manufacturers.

F.      A judgment on all claims for the damages suffered by Plaintiffs as a result of Defendants' infringing and counterfeiting activities, false advertising, unfair competition, and deceptive acts and practices, in an amount to be determined at trial.

G.      An order awarding Plaintiffs pursuant to 15 U.S.C. § 1117(a-c):

     i.      Plaintiffs' actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement and counterfeiting, false designation of origin, unfair competition, false advertising, and false descriptions including an appropriate increase in those damages and profits;

     ii.     treble, enhanced, and/or exemplary damages because of Defendants' willful and wanton acts;

     iii.    statutory damages because of Defendants' willful and wanton use of Plaintiffs' counterfeit marks;

iv.      all of their costs, disbursements and other expenses incurred due to Defendants' unlawful conduct; and

v.      Plaintiffs' reasonable attorneys' fees because this is an exceptional case.

H.      An order awarding Plaintiffs actual damages for Defendants' common law trademark infringement and unfair competition.

I.      An order awarding Plaintiffs actual damages, plus attorneys' fees and court costs, and entering an injunction for violation of the FDUTPA under Fla. Stat. § 501.201, et seq., and §§ 501.2105, 501.211 (2021).

J.      An order granting such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

Dated: <u>August 5, 2026</u>

Respectfully submitted,

*/s/ Laura Ganoza*
**FOLEY & LARDNER LLP**
Laura Ganoza, Esq.
Florida Bar No. 0118532
lganoza@foley.com
atownsend@foley.com
200 S Biscayne Blvd., Suite 2100
Miami, FL 33131
Tel.: (305) 482-8400
Emily Ostreich, Esq.
Florida Bar No. 1059563
eostreich@foley.com
crowell@foley.com
100 N. Tampa St., Suite 2700
Tampa, Florida 33602
Tel.: (813) 229-2300

***Counsel for Plaintiffs***

28

## VERIFICATION

I, Vincent Oddo, of full age, being duly sworn according to law, upon oath, deposes and says:

1.    I am the Director of Operations of Parlux Ltd., a Plaintiff in this action.

2.    I have read the foregoing Verified Complaint and all the allegations contained therein. All the allegations in Verified Complaint are true based on my personal knowledge and the business records of Parlux Ltd.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on $\underline{8-5-26}$

$\underline{\hspace{3cm}}$
By:     Vincent Oddo
        Director of Operations
        Parlux Ltd.

29